1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    :  04-CR-874(ERK)
                             :
                             :
                             :
      -against-              :  United States Courthouse
                             :  Brooklyn, New York
                             :
                             :
                             :
TIRSO MARTINEZ-SANCHEZ,      :  Wednesday, October 19, 2016
                             :  12:00 p.m.
         Defendant.          :
                             :
                             :
                             :
- - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

For the Government:     ROBERT L. CAPERS, ESQ.
                        United States Attorney
                        Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                        BY: ERIK PAULSEN, ESQ.
                            Assistant United States Attorney


For the Defendant:      QUIJANO & ENNIS
                        Attorneys for the Defendant -
                        TIRSO MARTINEZ-SANCHEZ
                            40 Fulton Street, 23rd floor
                            New York, New York 10038
                        BY:  PETER E. QUIJANO, ESQ.


Court Reporter:  Angela Grant, RPR, CRR
                 Official Court Reporter


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Proceedings                                                    2

1           (In open court.)

2           (Defendant present in open court.)

3           COURTROOM DEPUTY:  All rise.  The United States

4    District Court for the Eastern District of New York is now

5    in session.  The Honorable VIKTOR V. POHORELSKY is now

6    presiding.

7           (Honorable VIKTOR V. POHORELSKY takes the bench.)

8           COURTROOM DEPUTY:  Calling CRIMINAL CAUSE FOR

9    STATUS CONFERENCE in Docket No. 04-CR-874, *United States of*

10   *America against TIRSO MARTINEZ-SANCHEZ*.

11          COURTROOM DEPUTY:  Counsel, please state your

12   appearances starting with the government.

13          MR. PAULSEN:  Erik Paulsen for the United States

14   government.

15          Good afternoon, Your Honor.

16          COURTROOM DEPUTY:  And for the defense.

17          MR. QUIJANO:  Good afternoon, Your Honor.

18          For the defendant Tirso Martinez-Sanchez, Peter E.

19   Quijano.  Present at counsel table this afternoon also is

20   Jose Antonio de Alba Patino.  He's assisting me in

21   Mr. Martinez's defense.  He is Mr. Martinez's attorney in

22   Mexico.

23          THE COURT:  I note also that the defendant is

24   receiving the assistance of an interpreter, Rosa Olivera, a

25   Spanish interpreter previously sworn to interpret

Proceedings                                          3

1    proceedings here.

2            I understand, Mr. Martinez-Sanchez, that you wish

3    to plead guilty to a criminal offense.  The decision to do

4    that is a serious decision and the Court has to be satisfied

5    that you understand the rights you will be giving up by

6    pleading guilty and the consequences or the potential

7    consequences of a guilty plea.

8            THE DEFENDANT:  Yes.

9            THE COURT:  So I'll discuss those matters with you

10   today and I will ask you questions.  The answers to the

11   questions must be given under oath so I'll ask my courtroom

12   deputy now to administer an oath for you to take.

13           COURTROOM DEPUTY:  Please stand and raise your

14   right hand.

15           (Defendant sworn.)

16           COURTROOM DEPUTY:  Please state your name for the

17   record.

18           THE DEFENDANT:  Tirso Martinez-Sanchez.

19           COURTROOM DEPUTY:  Thank you.  Please have a seat.

20           THE COURT:  Mr. Martinez-Sanchez, you've now taken

21   an oath to tell the truth and that means you must do so.  If

22   you should lie or otherwise intentionally mislead the Court

23   today, you could be prosecuted for the crime of perjury or

24   the crime of making false statements.

25           Do you understand that?

```
                          Proceedings                    4
```

1           THE DEFENDANT:  Yes, I understand.

2           THE COURT:  If there's anything that you do not

3    understand during the proceeding today, please don't

4    hesitate to tell me.  I'll be happy to clarify or provide a

5    further explanation about anything that you do not

6    understand completely.

7           Do you understand that?

8           THE DEFENDANT:  Yes.  Yes.  Thank you.

9           THE COURT:  How old are you?

10          THE DEFENDANT:  Forty-nine years old.

11          THE COURT:  And how far did you go with formal

12   schooling?

13          THE DEFENDANT:  Second year of secondary school.

14          THE COURT:  Have you had any difficulty

15   understanding what your attorneys have explained to you

16   about the charges and about your rights as you face these

17   charges?

18          THE DEFENDANT:  No.  I've understood it correctly.

19          THE COURT:  Are you now or have you recently been

20   under the care of a doctor or a psychiatrist for any reason?

21          THE DEFENDANT:  No, not psychiatric, but I take

22   medication on a daily basis for hypertension.

23          THE COURT:  And what medication do you take and

24   what is the dosage?

25          THE DEFENDANT:  Well, I don't remember the

Proceedings                                          5

1   medication at present because it's different from what I

2   used to take in Mexico, but I take two pills every morning.

3            THE COURT:  Are those the only medications you

4   take on a daily basis?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And you said that was for

7   hypertension?

8            THE DEFENDANT:  Yes, hypertension.

9            THE COURT:  And have you had any experience where

10  these medications made you unable to understand what was

11  happening around you?

12           THE DEFENDANT:  No.  No.  I've always understood

13  things correctly.

14           THE COURT:  As far as you know, they have no

15  effect on your mental capacity?

16           THE DEFENDANT:  No.  It does not effect me.

17           THE COURT:  And aside from those medications, did

18  you take any other pills or drugs or medications in the last

19  24 hours?

20           THE DEFENDANT:  No.

21           THE COURT:  I know it's not likely, but did you

22  have any alcoholic beverage to drink in the last 24 hours?

23           THE DEFENDANT:  No, sir, Your Honor.

24           THE COURT:  Have you ever been treated or

25  hospitalized for any kind of substance abuse, any kind of

Proceedings                                          6

1    addiction such as narcotics or alcohol or anything of that
2    nature?
3              THE DEFENDANT:  Well, I did undergo therapy for
4    alcoholism and drug addiction.
5              THE COURT:  And how long ago was that?
6              THE DEFENDANT:  Well, in 2007, in 2007 I was in a
7    program for drug addiction, and from 2007 to 2014 on my
8    arrest I was in AA.
9              THE COURT:  And I take it you're now no longer
10   being treated for any substance abuse issue?
11             THE DEFENDANT:  No, not now.  But I do continue
12   reading the book that is used in AA.
13             THE COURT:  Is your mind clear as you sit here
14   now?
15             THE DEFENDANT:  Yes, of course.  Quite clear.
16             THE COURT:  Mr. Quijano, I presume you've
17   discussed with Mr. Martinez-Sanchez the question of entering
18   a guilty plea?
19             MR. QUIJANO:  We have, Your Honor.
20             THE COURT:  In your view, does he understand the
21   rights that he will be waiving by pleading guilty?
22             MR. QUIJANO:  He does, Your Honor.
23             THE COURT:  Do you have any question about his
24   competency to proceed?
25             MR. QUIJANO:  None whatsoever.

Proceedings                                                7

1              THE COURT:  And I understand you are Spanish

2     speaking yourself, is that correct, Mr. Quijano?

3              MR. QUIJANO:  That's correct, Your Honor.

4              THE COURT:  And you were appointed or retained?

5              MR. QUIJANO:  Retained, Your Honor.

6              THE COURT:  Mr. Martinez-Sanchez, are you

7     satisfied with the assistance that you've received from your

8     attorney thus far in this case?

9              THE DEFENDANT:  Yes, quite satisfied.

10             THE COURT:  Do you feel that you need any more

11    time to discuss with him the decision to plead guilty before

12    we proceed further today?

13             THE DEFENDANT:  No.  No.  No.

14             THE COURT:  This case is assigned to Judge Korman

15    and that means that Judge Korman will be the judge who will

16    sentence you if you plead guilty and he's also the judge

17    that has to make the final decision about whether to accept

18    your guilty plea.  If you wish, you have the absolute right

19    to have Judge Korman listen to the plea instead of me.  And

20    if you chose to exercise that right, that is, if you chose

21    to have him listen to the plea rather than me, you could

22    suffer no harm or prejudice or any adverse consequence

23    because you made that decision.

24             Do you understand that?

25             THE DEFENDANT:  Yes, I understand correctly.  And

Proceedings                                                    8

1    I'm very much in agreement with your taking my plea.

2                THE COURT:  All right.  I do have a document here

3    that appears to be signed by you which indicates that you

4    are willing to allow me to listen to the plea.  Let me ask

5    my courtroom deputy to present the document to you, and let

6    me first confirm that that is your signature on this

7    document?

8                THE DEFENDANT:  Yes, Your Honor, it is my

9    signature.

10               THE COURT:  And did your attorney or someone

11   interpret or translate the document for you before you

12   signed it?

13               THE DEFENDANT:  Yes, a version was given to me and

14   it was explained to me correctly.

15               THE COURT:  All right.  And you did say you are

16   willing to give up your right to have Judge Korman listen to

17   the plea and permit me to listen to the plea; is that

18   correct?

19               THE DEFENDANT:  Yes, I'm in agreement.

20               THE COURT:  All right.  Let me turn to the

21   indictment and to the charge that I understand you're

22   prepared to plead guilty to.

23               First let me confirm that you did receive a copy

24   of the indictment in this case at some point?

25               THE DEFENDANT:  Yes, Your Honor.  Yes.

Proceedings                                           9

1        THE COURT:  And did you discuss the three charges

2   in the indictment and the other things in the indictment

3   with your attorney?

4        THE DEFENDANT:  Yes, I've spoken several times

5   about it.

6        THE COURT:  And do you understand all of the

7   charges in the indictment?

8        THE DEFENDANT:  Yes, I understand.

9        THE COURT:  Let me focus on Count Three because I

10  understand you're prepared to plead guilty to Count Three of

11  the indictment.  And I will go over that in a little more

12  detail.

13       First, let me read Count Three.  It reads as

14  follows:  In or about and between March 1999 and

15  January 2003, both dates being approximate and inclusive,

16  within the Eastern District of New York and elsewhere, Tirso

17  Martinez-Sanchez, together with others, did knowingly and

18  intentionally distribute a controlled substance, knowing and

19  intending that such controlled substance would be unlawfully

20  imported into the United States, which offense involved five

21  kilograms or more of a substance containing cocaine.

22       Now, if the government were required to prove this

23  offense against you at a trial, the government would have to

24  establish certain essential facts.  They're called the

25  elements of the offense and I'll go over them with you.  And

Proceedings                                              10

1    the government would have to establish each of these beyond

2    a reasonable doubt.

3              First, the government would have to prove that at

4    some point in the period of time between March 1999 and

5    January 2003, you, together with others, distributed a

6    controlled substance, distributed cocaine I should say.  And

7    by distributing means transferring cocaine from one person

8    to another, simple concept.  The government would have to

9    prove that you knew at the time that this cocaine was being

10   transferred that was, in fact, was occurring, that it was

11   cocaine that was being distributed.  The government would

12   have to prove that at the time that this cocaine was being

13   distributed, you knew and intended that that cocaine would

14   ultimately be imported into the United States from a place

15   outside of the United States.  The government would have to

16   prove that the amount of cocaine involved in this activity

17   was at least five kilograms of cocaine.

18             And, finally, the government would have to prove

19   that in some way this activity occurred or touched the

20   Eastern District of New York.  The Eastern District of New

21   York is a five county area that includes Brooklyn, Queens,

22   Nassau County, Suffolk County and Staten Island.  So those

23   are the elements of the offense that the government would

24   have to prove at a trial beyond a reasonable doubt if there

25   was a trial in this case.

Proceedings                                    11

1           Do you understand what I explained about that?

2           THE DEFENDANT:  Yes, I understand.

3           THE COURT:  Is that a satisfactory explanation of

4    the elements, Mr. Paulsen?

5           MR. PAULSEN:  Yes, Your Honor.

6           THE COURT:  Now, you have the right to continue --

7    you pleaded not guilty to the offense, I presume.

8           There was an arraignment already on this

9    indictment, counsel?

10          MR. PAULSEN:  There was, Your Honor.

11          THE COURT:  So you previously pleaded not guilty

12   to this offense.  You have the right to continue to plead

13   not guilty even if you're guilty.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I understand.

16          THE COURT:  If you maintain a plea of not guilty,

17   you have the right to a speedy and public trial before a

18   jury with the assistance of your attorney on all the charges

19   in the indictment including Count Three.

20          You understand that?

21          THE DEFENDANT:  Yes, I understand.

22          THE COURT:  You have the right to have an attorney

23   represent you not only at the trial but in all other

24   proceedings in connection with this case.  And if you could

25   not afford an attorney, the Court would appoint an attorney

1    to represent you at the Court's expense.

2              Do you understand that?

3              THE DEFENDANT:  Yes, I understand.

4              THE COURT:  At a trial you would be presumed to be

5    innocent.  You would not have to prove that you were

6    innocent.  You would not have to prove anything.  The

7    government has the burden of proof at a criminal trial, and

8    the government's burden is to produce evidence in court that

9    satisfies the jury unanimously that the defendant is guilty

10   beyond a reasonable doubt.  And if the government could not

11   meet that burden of proof at your trial, the jury would have

12   the duty to find you not guilty, even if you were guilty.

13             Do you understand that?

14             THE DEFENDANT:  Yes, I understand.

15             THE COURT:  At a trial witnesses for the

16   government would have to come to court and testify in your

17   presence.  Your attorney could cross examine the witnesses.

18   Your attorney could object to evidence that the government

19   sought to introduce.  Your attorney could offer evidence in

20   your behalf and he could compel witnesses to come to court

21   and testify in your behalf.

22             Do you understand that?

23             THE DEFENDANT:  Yes, I understand.

24             THE COURT:  You would have the right to testify at

25   the trial in your own behalf if you chose to testify.  You

Proceedings                                              13

1   could not, however, be required to testify.  The choice

2   would be entirely up to you and that's because the

3   Constitution of the United States guarantees that no

4   defendant in a criminal case can be required to testify and

5   say something that might be used to show that he or she is

6   guilty.  So if you chose to have a trial but chose not to

7   testify at the trial, the judge would instruct the jury that

8   they could not hold that against you.

9           You understand that?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  Now, if you plead guilty instead of

12   going to trial, you will be giving up your right to a trial.

13   And there will be no trial and you'll have no right to

14   appeal to a higher court on the question of whether or not

15   you're guilty.  Judge Korman will enter a judgment of guilty

16   and impose a sentence on you based only on the plea of

17   guilty and without any trial whatsoever.

18          Do you understand that?

19          THE DEFENDANT:  Yes, correct.  I understand.

20          THE COURT:  If you plead guilty, I will have to

21   ask some questions in order to satisfy myself that you are,

22   in fact, guilty of the offense.  You'll be required to

23   answer the questions.  And in doing that you will be giving

24   up the right I mentioned a few moments ago, that is, the

25   right not to say something that can be used to show that

Proceedings                                    14

1    you're guilty.

2            Do you understand that?

3            THE DEFENDANT:  Correct.  I understand.

4            THE COURT:  So, Mr. Martinez-Sanchez, do you wish

5    to give up your right to a trial and all of the other rights

6    that I've just discussed with you?

7            THE DEFENDANT:  Yes, I want to waive them.

8            THE COURT:  I understand you have an agreement

9    with the government concerning your plea.

10           THE DEFENDANT:  Yes.

11           THE COURT:  Have I been provided with a signed

12   copy of the agreement, counsel?  Did I overlook it?  I don't

13   have it up here.

14           MR. QUIJANO:  I'll give you another one.

15           MR. PAULSEN:  Your Honor, if it's not with you,

16   it's among the papers here.

17           THE COURT:  It is, okay.  I have an unsigned copy

18   but I don't --

19           MR. QUIJANO:  We have it, Your Honor.  I'm sorry.

20           MR. PAULSEN:  Thank you, Your Honor.

21           THE COURT:  Yes.  And I have a copy of -- I have

22   the original I should say of the agreement or what appears

23   to be the agreement before me now.  It bears today's date,

24   October 19th, on the last page.  And it has the signatures

25   of various people including the signature that appears to be

Proceedings                                              15

1    yours, Mr. Martinez-Sanchez.

2            Let me ask my courtroom deputy to present this to

3    you and confirm that that is, in fact, your signature.

4            Is that your signature?

5            THE DEFENDANT:  Yes, it is my signature.

6            THE COURT:  Before you signed the agreement, did

7    someone translate it or explain it to you in your language?

8            THE DEFENDANT:  Yes, it was explained to me.

9            THE COURT:  And did you discuss the various terms

10   of this agreement with your attorney?

11           THE DEFENDANT:  Yes, I've spoken with him about

12   it.

13           THE COURT:  Do you understand absolutely

14   everything that's written in this agreement?

15           THE DEFENDANT:  Yes, I understand it correctly.

16           THE COURT:  And except for any promises in writing

17   in this agreement, did anyone make any promise to you to

18   induce you to plead guilty?

19           THE DEFENDANT:  No.  No one has promised me

20   anything.

21           THE COURT:  All right.  Lewis, could you get the

22   agreement back.

23           All right.  It has been marked.  This agreement

24   has been marked now as Exhibit 1 for purposes of today's

25   proceedings.

Proceedings                                    16

1              Today is the 19th, is it not?

2              MR. PAULSEN:  Yes, Your Honor.

3              THE COURT:  Let me go over with you now the

4    potential punishments you face for this offense.  First of

5    all, the Court pay impose a term of imprisonment.  And the

6    term of imprisonment could be as much as life imprisonment.

7    That's the maximum term.

8              Do you understand that?

9              THE DEFENDANT:  Yes, I understand.

10             THE COURT:  This offense also carries what's known

11   as a minimum term of imprisonment of ten years.  That is

12   that the Court must impose a term of imprisonment of at

13   least ten years.

14             Do you understand that?

15             THE DEFENDANT:  Yes, I understand.

16             THE COURT:  There are some circumstances that

17   permit a Court to ignore that mandatory minimum, but the

18   Court must make detailed findings about whether those

19   circumstances exist.  And if the Court finds that those

20   circumstances do not exist, then the Court will be required

21   to impose a minimum sentence of ten years of imprisonment.

22             Do you understand that?

23             THE DEFENDANT:  Yes, I understand.

24             THE COURT:  You also face a term of supervised

25   release.  The term of supervised release will begin after

Proceedings                                                  17

1    you complete whatever term of imprisonment is imposed.  The

2    term of supervised release must last for a minimum of five

3    years.  And the term of supervised release could last as

4    much as the rest of your life.

5           While serving a term of supervised release, you

6    will be required to comply with conditions that the Court

7    sets.  And if you fail to comply with any of the conditions,

8    the Court has the option to sentence you to serve further

9    time in prison.  And on each occasion that the Court finds

10   that you have violated one or more conditions of supervised

11   release, the Court may impose an additional term of

12   imprisonment of up to life in prison without giving you

13   credit for any time previously served in prison.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I understand.

16          MR. PAULSEN:  Your Honor, may I put something on

17   the record?

18          THE COURT:  You may.

19          MR. PAULSEN:  Your Honor's recitation of this

20   statutory authority is correct.  We do note, however, in

21   Footnote 1 that in extradition cases the government will not

22   seek life penalties for any violations for which life will

23   be permitted.

24          THE COURT:  I did note that in the agreement,

25   but...

Proceedings                             18

1          MR. PAULSEN:  So the government would not seek it.
2    The Court has the power to --
3          THE COURT:  That's what I wanted to confirm, that
4    the Court is not bound by that.  It's an undertaking that's
5    given by the Secretary of State, as I understand, in
6    obtaining the extradition.  The Court, however, is not bound
7    by that undertaking made by the Secretary of State.
8          Do you understand what we were talking about with
9    respect to that matter?
10          THE DEFENDANT:  Yes, I understand.
11          MR. PAULSEN:  Thank you, Your Honor.
12          THE COURT:  The Court can impose a fine and the
13    fine, the maximum fine, is either $1 million or twice the
14    gross gain or twice the gross loss.  In this case it would
15    be gross gain obtained as a result of the commission of this
16    offense.  And it's the greater of either 1 million or twice
17    the gross gain.
18          Has there been any calculation made of the gross
19    gain here, Mr. Paulsen?
20          MR. PAULSEN:  There has not, Your Honor.
21          THE COURT:  But the fine could be as high as twice
22    whatever the government could prove was gained from the
23    criminal act to which you're pleading guilty.
24          Do you understand that?
25          THE DEFENDANT:  Yes, I understand.

Proceedings                                    19

1          THE COURT:  Separate from the fine, the Court will

2     enter an order of forfeiture which is identified in your

3     agreement.

4          I believe it's a money judgment for $2 million, is

5     that correct, Mr. Paulsen?

6          MR. PAULSEN:  That's correct, Your Honor.

7          THE COURT:  And that means that you will be

8     required to forfeit $2 million to the government, and that's

9     separate from any fine that is imposed.

10         Do you understand that?

11         THE DEFENDANT:  Yes, I understand.

12         THE COURT:  You will also be required to pay a

13    special assessment of $100.

14         And, finally, upon conviction for this offense you

15    are subject to what is known as removal deportation.  That

16    means that the government, not the attorney's office, the

17    U.S. Attorney's Office, but the other agency of the

18    government will likely seek your deportation and removal to

19    return to your country of citizenship or natural origin.

20         Do you understand that?

21         THE DEFENDANT:  Yes, I understand.

22         THE COURT:  Is there anything else with respect to

23    punishment that I've overlooked, Mr. Paulsen?

24         MR. PAULSEN:  No, Your Honor.

25         THE COURT:  Now, in sentencing you, in deciding on

Proceedings                                    20

1   the sentence, Judge Korman will have to consult the

2   sentencing guidelines which are some laws that effect the

3   sentencing process.

4           Did you discuss the sentencing guidelines and

5   their operation with your attorney?

6           THE DEFENDANT:  Yes.  Yes, we've spoken several

7   times about it.

8           THE COURT:  All right.  Well, I'll go over this

9   briefly.

10          Before you are sentenced, Judge Korman will review

11  and consider various factors with respect to the commission

12  of this offense and your role in the commission of the

13  offense and then make a determination about what guideline

14  level applies to your sentencing situation.  The guideline

15  level that he decides to be applicable here will specify a

16  range of imprisonment for your offense.

17          Judge Korman is not required to follow that

18  recommendation of the guidelines.  And, indeed, he is

19  required to consider other laws and other factors that

20  effect sentencing before determining what the proper

21  sentence for your case will be.  But he must, at a minimum,

22  decide what the applicable guideline level is for your case,

23  what the sentencing recommendation of the guidelines is and

24  then he has to carefully consider whether to follow that

25  recommendation.  Whatever sentence he does impose, Judge

Proceedings                          21

1   Korman is required to articulate sound reasons for the

2   sentence.

3           I will ask the attorneys to tell me what they

4   think the guidelines are likely to say with respect to this

5   offense.  But understand that this is just their estimate.

6   Judge Korman will not be bound by that.

7           Mr. Paulsen.

8           MR. PAULSEN:  Yes, Your Honor.

9           Based on the quantity of drugs that are involved

10  in this offense, the government estimates the defendant will

11  begin at base offense level of 38, the highest base offense

12  level.  He will receive enhancements for possessing

13  dangerous weapons, maintaining drug related premises, as

14  well as being a leader of the activity.

15          Given maximum acceptance of responsibility, we

16  estimate that his adjusted offense level will be 43.  The

17  guidelines for a range 43 is life, but as noted before, the

18  government would not seek that penalty.

19          THE COURT:  Mr. Quijano, do you have any different

20  guideline calculation?

21          MR. QUIJANO:  I wish I did.  No, Your Honor.

22          THE COURT:  All right.  Thank you.

23          With respect to the calculation of your

24  guidelines, Mr. Martinez-Sanchez, I note that there are

25  certain facts in your plea agreement that you have conceded,

Proceedings                                    22

1   and these are facts that effect the guideline determination

2   that's made by Judge Korman.  So you've conceded that the

3   offense involved at least 50,000 kilograms of cocaine, that

4   you maintained the premises for the purpose of distributing

5   narcotics, and that you were a leader with respect to this

6   distribution.

7           So you've conceded those facts in your plea

8   agreement, and that means you won't be able to challenge

9   those facts when it comes to sentencing.  You will not be

10  able to challenge what impact those facts have in

11  determining the guidelines for your case.

12          Do you understand that?

13          THE DEFENDANT:  I understand correctly.

14          THE COURT:  Now, you have also in your plea

15  agreement agreed not to appeal any sentence that's imposed

16  if in the event that the sentence calls for a term of

17  imprisonment of life or less.  So that means that basically

18  you will not have, as I understand it, any right to appeal

19  effectively in this case regardless of the sentence that's

20  imposed.  You do retain the right to assert that you

21  received ineffective assistance of counsel.  So you do

22  retain that right, but that is the only right to challenge

23  your sentence that I see in this case.

24          Is that a fair description, Mr. Paulsen?

25          MR. PAULSEN:  Yes, Your Honor, that's accurate.

Proceedings                                    23

1              THE COURT:  Mr. Quijano?

2              MR. QUIJANO:  Yes, Your Honor.

3              THE COURT:  Do you understand that,

4    Mr. Martinez-Sanchez?

5              THE DEFENDANT:  Yes, I understand.

6              THE COURT:  I should point out that, and this is a

7    fine distinction, but you not only give up your right to

8    appeal, but you've given up your right in any way to attack

9    the sentence by means of other proceedings such as, for

10   instance, what's known as habeas corpus proceedings.  So,

11   essentially, the sentence that's imposed on you is final

12   except for the one right you do retain to claim ineffective

13   assistance of counsel.

14             Do you understand that?

15             THE DEFENDANT:  Yes, I understand.

16             THE COURT:  Mr. Martinez-Sanchez, do you have any

17   questions you'd like to ask me about the charges, about your

18   rights or about anything else related to this matter that

19   may not be clear?

20             THE DEFENDANT:  No.  I'm satisfied.

21             THE COURT:  Mr. Quijano, is there anything else I

22   should review with your client before proceeding?

23             MR. QUIJANO:  No, Your Honor.

24             THE COURT:  Mr. Paulsen?

25             MR. PAULSEN:  No, Your Honor.  I think that was

Proceedings                                    24

1    very thorough.

2              THE COURT:  Mr. Quijano, do you know of any reason

3    why Mr. Martinez-Sanchez should not plead guilty to the

4    offense?

5              MR. QUIJANO:  No, Your Honor.

6              THE COURT:  Are you aware of any viable legal, as

7    distinguished from factual, offense to the charge?

8              MR. QUIJANO:  No, Your Honor.

9              THE COURT:  Mr. Martinez-Sanchez, are you ready to

10   plead?

11             THE DEFENDANT:  Ready.

12             THE COURT:  How do you plead to the charge

13   contained in Count Three of the indictment, guilty or not

14   guilty?

15             THE DEFENDANT:  Yes, guilty.

16             THE COURT:  Are you making this plea of guilty

17   voluntarily and of your own free will?

18             THE DEFENDANT:  Yes, of my own free will.

19             THE COURT:  Has anyone threatened you or forced

20   you to plead guilty?

21             THE DEFENDANT:  No.

22             THE COURT:  Other than the plea agreement that we

23   discussed earlier, did anyone make any promise to you that

24   caused you to plead guilty?

25             THE DEFENDANT:  No.

```
                        Proceedings                    25
```

1          THE COURT:  Has anyone made any promise to you

2    about the sentence you will receive?

3          THE DEFENDANT:  No.

4          THE COURT:  Could you tell me, in your own words,

5    what you did in committing the offense charged in Count

6    Three?

7          THE DEFENDANT:  Approximately from 1984 to 2007 I

8    agreed with other people to distribute and import

9    intentionally several kilos of cocaine from Mexico to the

10   United States.  For instance, approximately in the year

11   2000, I devised and managed a system that would use train

12   routes, existing train routes, train routes that we built

13   and warehouses to store kilograms of cocaine from Mexico to

14   different parts of the United States.  This included Los

15   Angeles, Chicago and Brooklyn, New York.  I knew that doing

16   this was illegal.

17          MR. QUIJANO:  May I have a moment, Your Honor?

18          THE COURT:  Yes.

19          (Brief pause.)

20          MR. QUIJANO:  Your Honor, during the allocution I

21   believe in translation after Mr. Martinez talked about the

22   warehouses and storing of cocaine in the warehouses, he also

23   said and to transport the cocaine into the United States.  I

24   think the word "transport" was left out.

25          THE COURT:  All right.  I'll just confirm that

Proceedings                                          26

1   with Mr. Martinez-Sanchez.

2           As I understand it, you oversaw and administered a

3   scheme for transporting and storing cocaine; is that

4   correct?

5           THE DEFENDANT:  It's correct.

6           THE COURT:  And the transportation included the

7   transportation of cocaine from Mexico to points in the

8   United States?

9           THE DEFENDANT:  Yes, that's correct.

10          THE COURT:  And the amount of cocaine that was

11  transported exceeded five kilograms; is that correct?

12          THE DEFENDANT:  Yes, that's correct.

13          THE COURT:  And by transported I mean transported

14  from Mexico into the United States.

15          THE DEFENDANT:  Yes.

16          THE COURT:  Is there anything else about which I

17  should inquire, Mr. Paulsen?

18          MR. PAULSEN:  No, Your Honor, the government is

19  content.

20          THE COURT:  Mr. Quijano?

21          MR. QUIJANO:  No, Your Honor.  Thank you.

22          THE COURT:  Based on the information provided to

23  me today I find that Mr. Martinez-Sanchez is acting

24  voluntarily, that he fully understands the charge, his

25  rights and the consequences of his plea.  I find also that

Proceedings                    27

1    there's a factual basis for the plea, and, therefore,

2    recommend that Judge Korman accept Mr. Martinez-Sanchez's

3    plea of guilty to Count Three of the indictment.

4           Mr. Hugh, do you know if Judge Korman has yet set

5    a date for sentencing?

6           COURTROOM DEPUTY:  Yes.  Judge Korman sets

7    April 12th of next year, 2017, at 2 o'clock in the

8    afternoon.

9           THE COURT:  So April 12th of 2017 is some months

10   off now but is the date now set for your sentencing,

11   Mr. Martinez-Sanchez.

12          Before your sentence, the Probation Department of

13   this Court will conduct a presentence investigation and

14   issue a Presentence Report.  You'll get a copy of the

15   report, your attorney will get a copy, as well as the

16   attorney for the government and you'll have the opportunity

17   to tell the Court about any mistakes or omissions from the

18   report that are important.

19          In order to prepare that report, a probation

20   officer will interview you.  You have the right to have your

21   attorney present with you during that interview.  You should

22   keep in mind that the preparation of this report and the

23   information that's provided in this report is typically the

24   principal way that the Court finds out about a defendant's

25   background and other personal circumstances so that those

Proceedings                                    28

1   can be considered at the time of sentencing, and that means

2   it's often in the interest of the defendant to cooperate with

3   the probation office in that process.  You should, of course,

4   listen to your attorney's advice with respect to that.

5           Is there any other matter we should address today

6   before adjourning, counsel?

7           MR. PAULSEN:  There is not, Your Honor.

8           MR. QUIJANO:  No, Your Honor.  Thank you.

9           THE COURT:  I will return to counsel for the

10  government the plea agreement that was marked here for any

11  further proceedings where they may be necessary.  It may be

12  necessary.

13          MR. PAULSEN:  Thank you, Your Honor.

14          THE COURT:  And we are now adjourned.

15          MR. PAULSEN:  Thank you.

16          THE DEFENDANT:  Thank you, Your Honor.

17          (Proceedings adjourned at 1:12 p.m.)

18

19

20

21

22

23

24

25

ANGELA GRANT, RPR, CRR
*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter*
/s/ Angela Grant  July 14, 2017